**WILLIAMS, Director, etc, et v**
**STATE ex GRIBBENS**
and five others (6 cases)

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2278, 2279, 2280, 2281, 2282 & 2283

Decided April 7, 1933

John L. Davies, City Solicitor, Columbus, E. W. McCormick, Columbus, Charles R. Petree, Columbus, and C. C. Williams, Columbus, for plaintiffs in error.

L. R. Pugh, Columbus, for defendant in error.

## OPINION

By HORNBECK, J.

This is an error proceeding. The greater portion of the briefs, which have become unusually voluminous, extending into rejoinder and sur-rejoinder briefs, is given to a discussion of the weight of the evidence. As is well known to experienced counsel, the trial court had full right to give credence to the statements of the plaintiffs or the defendants, and so long as his determination was not so manifestly against the weight of the evidence as to shock the conscience of this court it is. not within our province to disturb it. Evidently, upon fair consideration of all the evidence he determined that in the light of the circumstances the statements of the plaintiffs represented a fair presentation of what had occurred at the times Mr. Rossbach made

request for the resignation of the employees. We have the opinion of the trial court before us, and have advantage of the theory upon which determination of the case was made, and it is upon the basis that the plaintiffs gave a fair version of what transpired in the Rossbach conversations. We, therefore, start upon that basis, to determine if there has been any prejudicial error in the application of the law to the facts so found. The trial court says in substance that under the law there was proof from which it might be inferred that the statements of Mr. Rossbach to the plaintiffs soliciting their resignations were coercive, but the proposition upon which the judgment below rested was grounded in the main, upon a determination that the plaintiffs were induced to resign by representations made to them by Mr. Rossbach on behalf of the Director, which thereafter were not observed by the Director. In this conclusion we are constrained to say under the evidence the trial court could well have found support.

It may be that the Director at all times purposed to carry out the representations made to Mr. Rossbach respecting the retention of the employees in the manner afterwards undertaken, and his action in so doing may have been in good faith. However, this would not change the legal rights of plaintiffs if the import of that which Mr. Rossbach said to the employees was different than the director intended should be conveyed to them. **Inasmuch as it can not be questioned that Mr. Rossbach acted for and on behalf of the Director, he must be bound by the import and effect of the statements made to the employees.** The plaintiffs were under protection of Civil Service. In a spirit of cooperation, they had mutually agreed to divide the work to be done in their department and to apportion the pay therefor equally, resulting in a reduction of salary of approximately 50% in each instance, with the exception of Mrs. Hunter. **In the absence of some misconduct or dereliction of duty found against the employees after charges made, these employees had no reason to fear the loss of their employment** except as it might be accomplished by the ordinance of February 1st 1932. **It was wrongful for the Director or any one at his suggestion to call upon these employees for their resignations,** under the circumstances, because the procedure incumbent upon the Director to bring about a reduction of the force as provided in the ordinance was well defined at law. It thus must be assumed that when these

employees, who could only be relieved from duty as we have indicated, tendered their resignations there must have been some strong inducing cause.

In meeting the demand for reduction of force as provided in the ordinance of February 1st, the Director could not have disturbed Mrs. Hunter nor Mr. Rees, because the positions which they held had not been changed nor the number reduced. The Director could have discharged all inspectors in the various classes in excess of the number provided by the ordinance, but this would have left in the appointment the number of regular employees provided by the ordinance. This action would have required the Director upon any reasonable determination of relative fitness to have made decision from among the regular employees of those who would remain. State ex Herrick et v Searcy et, 11 C.C. N.S. 521. The inference from the statements of Mr. Rossbach to the plaintiffs if made as found by the trial court, was inescapable that as an inducement to procuring the resignations the employees were assured that choice for permanent appointments eventually was to be made from among the regular employees and without consideration of others. It seems unnecessary to point out at length the particulars in the statements requiring this inference. That the representations were made as claimed by the plaintiffs is strengthened by the certificate of the Director on the pay roll sheet. The trial court could have found that though it was possible that the Director did not see nor know of the statement thereon, it was probable that he knew and understood the import of what there appeared.

It was thus necessary on the part of the Director to conform to the representations under which the employees were induced to resign to make selection for the permanent appointments from their number. Permitting those appointees to remain who because of age could not take the Civil Service appointment may well be considered as tantamount to their selection from the whole number according to the agreement, but when the Director chose to make provisional appointments from among the other appointees, this was a complete departure from the representations made by Mr. Rossbach to the employees. This action was but the beginning of procedure which discountenanced any purpose to make selection from among the employees only, and indicated a plan to eventually throw open all of the appointments in the department to a list made up after exam-

ination by the Civil Service Commission. Such action might result in no one of the employees being retained in the service. Had the provisional list first tendered been accepted by the Commission, an examination must have been held not longer than ninety days thereafter, and a list made up from all who were permitted to take the examination, which may or may not have included any of the employees of the department. The Director had the means by which he could readily have completed the proposal made by Mr. Rossbach to the employees, in Rule 18, §1 of the Rules of the Civil Service Commission, which provides:

"Any person holding an office or position under classified service, who has been separated from the service or reduced in rank may, with the consent of the Commission be reinstated within one year from the date of such separation to a vacancy in the same or similar office or position in the same department."

After acceptance of the resignation this was the only way by which the Director could have complied with the promises and inducements of his chief building inspector. Such action would have been the result of cooperation by the employees, would have recognized those who had resigned, would have made the appointees beholden to the Worley administration and would have made selection from among those who resigned.

**It thus follows that the plaintiffs were improperly and wrongfully induced to tender their resignations;** the Director should have reinstated them or others of their number, and the Civil Service Commission should have sustained their application for reinstatement. The judgment of the trial court will, therefore, in all cases wherein the Director of Public Safety and The Civil Service Commission are plaintiffs in error be affirmed. The cross-petition of defendant i nerror, Rees is considered hereafter.

KUNKLE and BARNES, JJ, concur.

No 2280

## CROSS PETITION IN ERROR OF JOHN W. REES

By BARNES, J.

The remaining question for determination relates to salary of relator, John W. Rees.

The trial court made allowance to all of the relators on the basis of fixed salary by appropriation of council less deductions for earnings from other employments with consideration for diligent effort in obtaining other employments and thus reduce the loss. The question of salary allowance is not discussed in the briefs except by counsel for relator, John W. Rees.

This case differs in facts in that no officer de facto served in the position from which John W. Rees was removed and for that reason it is urged that there should be no deductions from the full salary by reason of earnings from other employments.

Throop on Public Officers is cited by counsel for relator, Rees, and we find that §515 very positively sustains the contention. The text is formulated from a decision by Judge French, 102 New York, 536.

We think the rule in Ohio is otherwise and the reasoning of the Court in **Cleveland v Luttner,** 92 Oh St, 493, is the basis for our conclusion. While the Cleveland case, supra, is to be distinguished in its facts in that de facto officers were doing the actual work and receiving pay, yet the theory of the Supreme Court in awarding the salary is applicable to the case of the relator, Rees.

On page 495 of the per curiam opinion the court announces the following principle:

"If the public servant * * * be wrongfully dismissed from public office, **he should have the same remedy for such wrong as a private servant for any wrong done him in his employment. The theory in both cases should be to make the wrong party whole;** that is to reimburse him for his loss.

The mere fact that the wronging party employs or appoints someone else during the period of wrongful ouster should not excuse him for the full measure of his duty and liability.

The defendants in error in the foregoing cases should therefore recover their salaries less the respective amounts they have otherwise earned in the exercise of due diligence during the period they were wrongfully oustered." . .

The black face is ours.

The court very clearly and positively says that the remedy of the wrongfully discharged public servant is the same as that of a private servant. **The theory in both cases is to make the wronged party whole.**

It is obvious that in applying this principle to the instant case **no distinction can be made by reason of the fact that no de facto officers served in the position from which the relator, Rees, was wrongfully removed.**

We are aware that many courts of last resort in other jurisdictions hold to the contrary rule.

In fact, Ohio follows a minority rule on many phases of the questions here involved.

Judge Jones in a very strong dissenting opinion in the Cleveland case, supra, cites a multitude of decisions of other states to the effect that where a de facto officer is serving in the position no salary allowance can be made at all to the wrongfully discharged servant. We also find the weight of authority in other jurisdictions hold to the principle that salaries can not be recovered in a mandamus action. However, in the case of **State ex Bay v Witter, Director of the Department of Industrial Relations et, 110 Oh St 216, it is held that salaries may be recovered by wrongfully discharged servants in an action in mandamus.**

As we view it, the legal questions involved in this case are settled on the theory of stare decisis.

Counsel for relator, Rees, also questions the amount and basis of deductions by reason of earnings during period of discharge.

We think the amount of the deduction made by the trial court is amply supported by the evidence.

The judgment of the trial court will, therefore, in all cases be affirmed. Exceptions allowed to each party. Counsel will prepare entries in accordance with this opinion.

HORNBECK, PJ, and KUNKLE, J, concur.